IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:18-798-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| MARLIN POWELL | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in her sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 445). Seeking compassionate release, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with her current medical problems, constitute extraordinary and compelling reasons for her immediate release.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

_____

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

2

is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification.  28 U.S.C. § 994(t).  Also, the defendant bears the burden

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

4

their behalf.  The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).  *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government has conceded that the defendant has properly exhausted her administrative remedies.  Thus, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release.  However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release.  If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus.

*See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

In her motion (ECF No. 445) the defendant contends that she suffers from COPD, asthma, and has a history of smoking. She also points to her advanced age (53). At one point in her written motion to the court, she contends that she suffers from a "terminal illness." Medical records furnished by the Federal Bureau of Prisons confirm that the defendant suffers from COPD and asthma. The Presentence Report (PSR) prepared in connection with her sentencing in November 2020, reveals that she suffered only from arthritis and bladder problems. It thus appears that her medical conditions have arisen since she became incarcerated. The defendant has been vaccinated for COVID-19.

In its opposition brief, the government contends that the defendant's medical conditions are not sufficiently serious to warrant a determination that extraordinary and compelling reasons have been demonstrated. The government also contends that the defendant's release would result in an immediate danger to the community, in reliance upon the defendant's § 3553(a) factors.

The court respectfully disagrees with regard to the defendant's medical condition. COPD and asthma are among the diseases identified by the CDC as being diseases which might cause severe conditions if the defendant contracted Covid. Accordingly, the court determines that the defendant has demonstrated an extraordinary and compelling reason for

6

consideration of her immediate release.

However, the court's inquiry does not end here.  Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors, and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense*.  Beginning in at least June 2018, the defendant was part of a drug trafficking conspiracy which transported and distributed significant quantities of "ice" methamphetamine and heroin in South Carolina.  Her co-defendants obtained cocaine, ice, and heroin from Mexican cartel sources in Atlanta, Georgia and then transported the drugs to South Carolina for distribution.

The defendant is one of 6 defendants names in a 3-Count Indictment filed on August 21, 2018.  The defendant was named in Count 1, which charged conspiracy to possess with intent to distribute and to distribute a quantity of heroin (lesser included offense) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.

Pursuant to a written plea agreement (ECF No. 279), the defendant pleaded guilty to the lesser included offense of Count 1, that being conspiracy to possess with intent to distribute and to distribute a quantity of heroin.

The Presentence Report (PSR) (ECF No. 413) determined that the defendant's total offense level applicable was 35 and her criminal history category was I.  This yielded an

advisory Guideline range of 168 to 210 months incarceration. At sentencing, the defendant filed objections to the PSR, relating primarily to the drug weight attributable to her and her role in the offense. The court sustained the defendant's objections and, after calculating the new Guideline provisions, the new range was 24 to 30 months. The defendant was then sentenced to 24 months incarceration, followed by a 3-year term of supervised release.

The defendant did not file an appeal of her sentence or conviction.

The defendant has served approximately 13 months of her 24-month sentence and is currently scheduled to be released in September 2022. She is housed at FCI Tallahassee.

2. *History and Characteristics of the Defendant.* The defendant is 53 years old. She is single and has 3 adult children. At the time of her incarceration, she was residing in Gaston, South Carolina with her daughter, Summer Smith and her three children, and a friend. Ms. Smith is a co-defendant in this case who is currently incarcerated. As noted above, at sentencing, the defendant's only noted health problems were rheumatoid arthritis and bladder issues.

The defendant began using cocaine and crack cocaine during her early 20s and continued to use these and other drugs through her 30s. She has a 10th grade education and has prior employment as a warehouse worker at Home Depot.

*Post Sentencing Conduct*

The defendant has no disciplinary infractions on her record while at the BOP. She has taken 12 educational courses to include crochet, basic nutrition, civics and government, and

parenting.

The defendant suggests that if released from prison, she would reside with her daughter, Summer Smith, which is a problematic issue because Ms. Smith is also incarcerated.

3.  *Seriousness of the Crimes*.  As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4.  *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*.  The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6.  *Whether the Sentence Protects the Public from Future Crimes of the Defendant.*  The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.  The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7.  *Need to Avoid Unwarranted Disparity*.  Viewing the defendant's sentence as compared with the culpability of the defendant and her associates, her imposed sentence was

9

and is in line with the other co-defendants.

## CONCLUSION

For the foregoing reasons, the court determines that, even if the defendant has demonstrated an extraordinary and compelling reason due to her medical conditions, her release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. She has served only a portion of a very small sentence which was greatly reduced from the original Guideline sentence. The motion is respectfully denied.[2] (ECF No. 445).

IT IS SO ORDERED.

*Joseph F. Anderson Jr*

March 1, 2022                                         Joseph F. Anderson, Jr.
Columbia, South Carolina                      United States District Judge

---

[2] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")